## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

HILARY AKIN JACOBS; PHILIP MATTHEW
JACOBS; and MICHAEL WEAVER,

    Plaintiffs,

v.

CHUCK CATLIN; MYRLENE JEAN; MELINDA
WRIGHT; SHERIFF MATT GRAY; DOUGLAS
COUNTY SHERIFF'S OFFICE; and DOUGLAS
COUNTY, GEORGIA,

    Defendants.

Civil Action No.
1:25-cv-01270-SDG

## OPINION AND ORDER

This matter is before the Court on various motions filed by the parties,
including Plaintiffs' motion for a preliminary injunction [ECF 44]. Because the
Court abstains from hearing Plaintiffs' claims, it **DENIES** their request for
preliminary injunctive relief. Defendants' motion to dismiss [ECF 39] is therefore
**GRANTED in part** and **DENIED as moot in part**, and Plaintiffs' motion for leave
to amend [ECF 43] is **DENIED as moot**. Plaintiffs' claims for injunctive and
declaratory relief are **DISMISSED without prejudice**. Proceedings related to their
claims for damages are **STAYED** pending completion of the state criminal
prosecution against them.

# I.    Introduction

## A.    Factual Background[1]

This case centers around Plaintiffs' distribution of political flyers in Douglas County, Georgia.[2] The flyers' content is ultimately irrelevant to Plaintiffs' First Amendment claims, but they describe it as "colportage"—*i.e.*, religious literature.[3] The flyers were folded and placed in Ziploc bags weighted with corn kernels, then tossed around various parts of the county.[4] Plaintiffs contend that Defendants unconstitutionally targeted this exercise of Plaintiffs' First Amendment rights. The day after distributing the flyers, Plaintiffs Hilary Akin Jacobs and Philip Matthew

---

[1]    As discussed below, even if the Court permitted Plaintiffs to amend their complaint, abstention would still be appropriate. Thus, while the Court does not rule on the substance of Plaintiffs' motion for leave to amend, it does consider the allegations in the proposed amended complaint to the extent that they are pertinent to its consideration of abstention.

[2]    ECF 1, ¶¶ 1–2, 22; ECF 43-1, ¶¶ 17–18. Plaintiffs' allegations concerning Hilary Jacobs's conduct are varied. The original complaint suggests she herself distributed flyers. ECF 1, ¶¶ 22–23. The proposed amended complaint denies that she was involved. ECF 43-1, ¶¶ 17, 30.

[3]    *See, e.g.,* ECF 43-1, ¶ 60. The Oxford English Dictionary defines colportage as "[t]he work of a colporteur; spec. the distribution of religious books and tracts by colporteurs." *Colportage*, OXFORD ENGLISH DICTIONARY, https://www.oed.com/dictionary/colportage_n?tab=meaning_and_use#8940403 [https://perma.cc/WFG2-FJA2] (last visited Nov. 3, 2025).

[4]    ECF 43-1, ¶¶ 18–19, 31. The original complaint alleges that the baggies were thrown into residential yards. ECF 1, ¶ 22.

Jacobs allege that they were arrested, then charged with 302 counts of littering.[5] Their bond was set at $30,000 each.[6] Rather than pursue the case, however, Defendants allegedly "arranged" for the prosecution to be suspended—thereby leaving the Jacobses in legal limbo with charges hanging over their heads but no means to challenge them.[7] It was not until after Plaintiffs filed this federal suit that the Jacobses were charged by formal accusation, each with five misdemeanor counts of littering.[8] While an arrest warrant was issued for Michael Weaver, he has never been served with it. Instead, Plaintiffs say he has retreated into "reclusion" because he fears (among other things) he will not be able to meet a bond like that imposed on the Jacobses.[9]

## B.    Procedural History

Plaintiffs filed suit in this Court on March 10, 2025, bringing civil rights claims under 42 U.S.C. § 1983 for First Amendment retaliation and violations of

---

[5]    ECF 1, ¶¶ 1, 28, 30. *See also id.* ¶¶ 26–27. The proposed amended complaint does not allege the number of littering counts charged. ECF 43-1, ¶ 33.

[6]    ECF 1, ¶ 2; ECF 43-1, ¶ 73.

[7]    ECF 1, ¶¶ 1, 34–35.

[8]    ECF 43-1, ¶¶ 16, 77; May 21, 2025 Accusation, *Georgia v. Jacobs*, Case No. 25SR00596 (Douglas Cnty. State Ct.). The Court may take judicial notice of filings in the criminal case against the Jacobses "to establish the fact of such litigation and related filings." *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (citations omitted).

[9]    ECF 1, ¶¶ 3, 32–33.

the Fourth and Fourteenth Amendments, as well as state-law claims for false imprisonment and abuse of process.[10] Defendants Chuck Catlin, Myrlene Jean, Melinda Wright, and Sheriff Matt Gray (the Individual Defendants) are employees of the Douglas County Sheriff's Office who were allegedly involved in obtaining or executing the warrants against the Jacobses.[11] The complaint does not specify whether the Individual Defendants are sued in their personal or official capacities (or both).[12] Douglas County and its Sheriff's Office were also named as Defendants.[13] Plaintiffs seek injunctive and declaratory relief, and damages.[14]

Defendants moved to dismiss the complaint on May 27, six days after the formal accusation was entered against the Jacobses in Douglas County.[15] Plaintiffs

---

[10] *Id.* at 16–27.

[11] *Id.* ¶¶ 12–17. The complaint also names John Does 1–8 and Jane Doe as Defendants. *Id.* ¶¶ 15, 17. "As a general matter, fictitious-party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (citing *New v. Sports & Recreation, Inc.*, 114 F.3d 1092, 1094 n.1 (11th Cir. 1997)). There is a limited exception when the plaintiff's description of the defendant is "so specific" that it is "surplusage." *Id.* (quoting *Dean v. Barber,* 951 F.2d 1210, 1215-16 (11th Cir. 1992)). Because the Court abstains from hearing this case, it does not address whether Plaintiffs' fictitious pleading satisfies this standard.

[12] ECF 1, ¶¶ 12–14, 16.

[13] *Id.* ¶¶ 18–19.

[14] ECF 1, Counts IV (declaratory judgment), VIII (preliminary injunction); ECF 43-1, Counts III (declaratory judgment), VI–VII (preliminary injunction).

[15] ECF 39.

responded to the motion by seeking leave to amend their pleading.[16] Separately, they sought a preliminary injunction to prevent Defendants from serving warrants on Weaver and to enjoin the state-court prosecution of the Jacobses.[17] The parties' arguments supporting and opposing dismissal, amendment, and injunctive relief are scattered throughout the various briefings.

## II.    Motion for Preliminary Injunction

To obtain preliminary injunctive relief, Plaintiffs must show (1) a substantial likelihood of success on the merits; (2) an irreparable injury; (3) that the harm caused by the injury would outweigh the damage the injunction may cause; and (4) that issuance of the injunction would not be adverse to the public interest. *Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003). Such injunctions are an extraordinary remedy that should not be granted unless the movant clearly establishes the burden of persuasion as to each element. *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998). Here, the Court does not go past the first. Since abstention is appropriate, Plaintiffs cannot show a substantial likelihood of success on the merits.

---

[16] *See generally* ECF 43-1. Plaintiffs propose to add factual allegations, drop some Defendants, add other Defendants, drop their state-law tort claims for false arrest, and add a conspiracy claim. ECF 43, at 2; ECF 43-1, ¶¶ 11, 16, 121–127.

[17] ECFs 43, 44.

**A.   *Younger* abstention applies to Plaintiffs' claims for injunctive and declaratory relief.**

Federal courts have a "virtually unflagging" duty to exercise their jurisdiction. *31 Foster Children v. Bush*, 329 F.3d 1255, 1274 (11th Cir. 2003) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). "But 'virtually' is not 'absolutely,' and in exceptional cases federal courts may and should withhold equitable relief to avoid interference with state proceedings." *Id.* (citing *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 359 (1989)). This is such a case.

In *Younger v. Harris*, the Supreme Court made clear that federal courts should refrain from interfering with pending state criminal proceedings when the state's vital interests are involved. 401 U.S. 37, 49 (1971). Among other things, *Younger* abstention promotes restraint by federal courts sitting in equity, and comity between states and the federal government. *Id.* at 43; *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982); *31 Foster Children*, 329 F.3d at 1274. "The importance of the state interest in the pending state [ ] proceedings and in the federal case calls *Younger* abstention into play. So long as the constitutional claims of respondents can be determined in the state proceedings and so long as there is no showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate, the federal courts should abstain." *Middlesex Cnty.*, 457 U.S. at 435. This is true whether the

plaintiff seeks injunctive or declaratory relief. *Younger*, 401 U.S. at 54 (injunctive relief); *Samuels v. Mackell*, 401 U.S. 66, 69 (1971) (declaratory relief). It is also true even when the plaintiff asserts his First Amendment rights are being violated. *See generally Younger*, 401 U.S. 37.

The Supreme Court summarized the factors that courts should consider when deciding whether to apply *Younger* abstention: (1) Is there an ongoing state judicial proceeding? (2) Do the proceedings implicate important state interests? (3) Is there an adequate opportunity in the state proceeding to raise constitutional challenges? *Middlesex Cnty.*, 457 U.S. at 432; *see also Tokyo Gwinnett, LLC v. Gwinnett Cnty.*, 940 F.3d 1254, 1268 (11th Cir. 2019). Here, the answer to each of these is Yes.

### 1.    Georgia's criminal proceeding is ongoing.

*Younger* abstention is appropriate when the state criminal proceeding starts before the federal-court plaintiff files suit. *Younger*, 401 U.S. at 41 (expressing "no view" whether courts should abstain when there was "no prosecution pending in state courts at the time the federal proceeding is begun"). *Younger* also applies when the federal case is first-filed but no "proceedings of substance on the merits have taken place" before the state prosecution is commenced. *Redner v. Citrus Cnty.*, 919 F.2d 646, 649 (11th Cir. 1990); *see also Middlesex Cnty.*, 457 U.S. at 437 ("It would trivialize the principles of comity and federalism if federal courts failed to take into account that an adequate state forum for all relevant issues has clearly

been demonstrated to be available prior to any proceedings on the merits in federal court."). Under either standard, there is an ongoing criminal prosecution of Plaintiffs in state court. *Younger*'s first factor is therefore satisfied.

### i.    The Jacobses

#### a.    The arrests initiated the criminal proceedings.

As to the Jacobses, they were arrested in November 2023, long before filing this suit.[18] That's sufficient to constitute an ongoing criminal proceeding. The Eleventh Circuit has held that, where a plaintiff "was twice released from jail on bond pending a state trial before he filed the federal suit, state criminal proceedings had begun against him." *Redner*, 919 F.2d at 649 (finding abstention proper when the plaintiff challenged the constitutionality of the ordinance for which he was arrested and jailed); *see also New Ga. Project, Inc. v. Att'y Gen., State of Ga.*, 106 F.4th 1237 (11th Cir. 2024) (holding that the district court should have abstained from hearing the case when the state's finance commission had begun an investigation of the plaintiff, held a hearing, and referred the plaintiff to the Attorney General's office but the matter had not yet been transferred to the state's administrative hearings office for an evidentiary hearing); *Tribble v. Tew*, 653 F. App'x 666, 667 (11th Cir. 2016) (per curiam) (concluding abstention was

---

18    *See, e.g.,* ECF 1, ¶ 2; ECF 43-1, ¶ 24.

appropriate when the plaintiff filed a federal suit before the state charged him by information).

Other circuits have similarly concluded that *Younger* abstention is appropriate when there has been an arrest but not yet a prosecution. *Rialto Theatre Co. v. City of Wilmington*, 440 F.2d 1326 (3d Cir. 1971) (per curiam) (concluding abstention was appropriate when the plaintiffs filed their federal suit after arrest); *Eve Prods., Inc. v. Shannon*, 439 F.2d 1073 (8th Cir. 1971) (per curiam) (same). Moreover, *Younger* itself suggests that abstention may be appropriate in limited instances when criminal proceedings have only been threatened but have "not yet formally [been] instituted." 401 U.S. at 45 (stating that injunctions of threatened state prosecutions may be proper under "very special circumstances"); *see also New Ga. Project*, 106 F.4th at 1242 (11th Cir. 2024) (noting that the Supreme Court has extended *Younger* abstention to "threatened-but-not-yet-filed prosecutions").

Plaintiffs here contend that Georgia law governs when its criminal cases are pending, citing only Georgia law.[19] But they have not explained why state law would control when a *federal* court must, under *federal* law, abstain from hearing a case because of an ongoing state action. *Cf. Hicks v. Miranda*, 422 U.S. 332 (1975) (analyzing whether abstention was appropriate without considering if state law

---

[19]   ECF 50, at 5.

dictated whether the criminal proceedings were ongoing). In any event, even if the Jacobses' arrests were not enough under *Younger* to trigger an ongoing criminal proceeding, the Jacobses were charged by formal accusation on May 21, 2025—before there were any substantive proceedings in this case.

### b.    No substantive proceedings on the merits occurred before the Jacobses were charged.

Plaintiffs argue that the filing of the complaint and proposed amended complaint in this action, as well as Defendants' motion to dismiss, "have substantially moved the federal case forward" such that abstention is not appropriate.[20] Under Eleventh Circuit law, however, this is not enough to constitute proceedings of substance on the merits.

The Court of Appeals has indicated that a variety of factors are relevant to this determination: "the time that the district court has spent considering the case, any motions ruled on, any discovery, the number of conferences [or hearings] held, and any change in the parties' position as a result of the federal litigation," as well as unruled-on motions filed by the parties. *New Ga. Project*, 106 F.4th at 1243 (quoting *Tokyo Gwinnett*, 940 F.3d at 1272; citing *For Your Eyes Alone, Inc. v. City of Columbus*, 281 F.3d 1209, 1218 (11th Cir. 2002)).

---

[20]    ECF 43, at 17.

Here, no motions were filed between the time this case was initiated and when the Jacobses were charged on May 21. This Court had only performed routine administrative tasks—entering undersigned's standing order, ruling on pro hac vice applications, reviewing certificates of interested persons, and issuing summonses.[21] It has not conducted any conferences or hearings or ruled on anything substantive. The Eleventh Circuit has held that similar levels of (in)activity support abstention. *New Ga. Project*, 106 F.4th at 1244 ("The only thing that the district court had done before that date was to admit New Georgia's attorneys pro hac vice and issue a routine standing order. And the only things that the parties had done were to file (1) a complaint, (2) pro hac vice applications and notices of appearance, (3) a motion for preliminary relief, and (4) service waivers."); *contrast For Your Eyes Alone*, 281 F.3d at 1213 (concluding that abstention was not appropriate when, among other things, the defendants had answered the complaint and moved for summary judgment; and the district court had held an evidentiary hearing and denied a TRO, all before even one of the plaintiffs was arrested).

There is thus an ongoing state criminal proceeding against the Jacobses.

---

[21]  ECFs 2–9, 11–35.

### ii.   Weaver

Unlike the Jacobses, Weaver has not been arrested or charged.[22] But the police have conveyed—at the apartment where Weaver used to live and to his father (who drives a car registered to Weaver)—that there is a warrant for his arrest.[23] When the Douglas County Sheriff's Office made statements to the media about distribution of the flyers, the officer said police were looking for a third person in connection with the incident. Plaintiffs say this meant Weaver.[24] Indeed, Weaver and the Jacobses are potential co-defendants in the criminal case. Although Plaintiffs argue that there is no pending state action as to Weaver,[25] the Court disagrees. At a minimum, the complete overlap between the issues presented by the Jacobses and by Weaver counsel against this Court proceeding only as to him.

### a.   Weaver's First Amendment claims are intrinsically intertwined with the criminal case against the Jacobs.

In *Hicks v. Miranda*, the Supreme Court addressed federal claims related to criminal prosecutions brought in connection with a showing of the film DEEP THROAT. 422 U.S. 332. The *Hicks* plaintiffs were the theater owner, his property

---

22    *See, e.g.*, ECF 1, ¶ 32; ECF 43-1, ¶ 79.

23    ECF 1, ¶¶ 3, 32–33; ECF 43-1, ¶¶ 6, 80–84.

24    ECF 43-1, ¶ 55.

25    ECF 43, at 16.

holding company, and the theater corporation itself. *Miranda v. Hicks*, 388 F. Supp. 350, 354 (C.D. Cal. 1974), *overruled*, 422 U.S. 332. When these plaintiffs filed suit, there were no pending criminal proceedings against any of them "by name." However, two of the theater's employees had been criminally charged and the theater's copies of the film had been confiscated and declared obscene. The plaintiffs therefore "had a substantial stake" in the state proceedings and their interests were intertwined with those of the theater's employees. 422 U.S. at 348–49. As a result, the Supreme Court concluded there was a pending criminal prosecution as to the plaintiffs for purposes of *Younger* abstention. *Id.* at 349. *See also Stivers v. Minnesota*, 575 F.2d 200, 203 (8th Cir. 1978) ("Ordinarily, persons not subject to ongoing state proceedings may seek declaratory relief, or a preliminary injunction, in federal district court against the threatened enforcement of an allegedly unconstitutional state statute without meeting the requirements of *Younger*. However, the Supreme Court has indicated that in some circumstances the comity considerations of *Younger* will apply to parties seeking relief in federal court, even though no state proceedings are pending against them by name.") (citations omitted). Such "derivative abstention" is appropriate here.

Weaver's claims are intrinsically intertwined with the Jacobses' federal claims and the criminal charges against them. The comity and restraint principles served by *Younger* abstention are just as applicable when federal court interference

in a state criminal proceeding is urged by someone who is not a party to the state case. *Hicks*, 422 U.S. at 349; *see also Stivers*, 575 F.2d at 203 (noting that the need for abstention may arise "where the interests of the parties seeking relief in federal court are closely related to those of parties in pending state proceedings and where the federal action seeks to interfere with pending state proceedings"). The Court concludes that moving forward on Weaver's federal claims would improperly interfere with the pending state criminal proceeding against the Jacobses.

### b. There is an ongoing criminal proceeding against Weaver.

That Weaver has not been arrested stems from his own conduct rather than a lack of action by law enforcement. Despite his knowledge of the arrest warrant, Weaver has gone into "reclusion" because he purportedly fears arrest on unconstitutional charges, cannot afford bail in the amount set for the Jacobses, and anticipates being physically assaulted (as Philip Jacobs allegedly was) if held in custody.[26] Weaver's reliance on *Steffel v. Thompson*, 415 U.S. 452 (1974), to support this argument is, however, misplaced.

First, *Steffel* addresses only whether *Younger* should be applied to certain requests for *declaratory* relief. The case does not support Weaver's appeal for *injunctive* relief to prevent his arrest and prosecution. Second, while the plaintiff

---

[26]   ECF 1, ¶¶ 3, 32–33; ECF 43-1, ¶¶ 6, 80–84.

in *Steffel* was threatened with prosecution for trespass for distributing handbills outside of a shopping center, there had been no criminal action of any kind when he sued in federal court: No arrest warrant had been issued nor had any criminal charges been filed. Without an ongoing proceeding, there was no vehicle for him to challenge the constitutionality of the statute. As the Supreme Court explained:

> [W]hile a pending state prosecution provides the federal plaintiff with a concrete opportunity to vindicate his constitutional rights, a refusal on the part of the federal courts to intervene when no state proceeding is pending may place the hapless plaintiff between the Scylla of intentionally flouting state law and the Charybdis of forgoing what he believes to be constitutionally protected activity in order to avoid becoming enmeshed in a criminal proceeding.

*Id.* at 462. In contrast, here, Weaver himself has thwarted the furtherance of any criminal proceeding. His Scylla and Charybdis are of his own making. Under these circumstances, the concerns raised by *Steffel* are not present.

When a plaintiff tries to avoid an ongoing state proceeding by pursuing a federal suit, the Supreme Court has indicated that abstention may be appropriate. In *Middlesex County Ethics Commission v. Garden State Bar Association*, a lawyer (Hinds) was investigated by a county ethics committee and served with formal charges. Rather than respond to the disciplinary complaint, Hinds sued in federal court alleging the disciplinary rules violated the First Amendment. The court

maintained that a person cannot actively avoid a state proceeding to litigate the same issues in a federal action:

> Hinds failed to respond to the complaint filed by the local Ethics Committee and failed even to attempt to raise any federal constitutional challenge in the state proceedings. Abstention is based upon the theory that the accused should first set up and rely upon his defense in the state courts, even though this involves a challenge of the validity of some statute.

*Middlesex Cnty.*, 457 U.S. at 435 (cleaned up). Similarly here, Weaver should not be permitted to styme progress of a state court proceeding to try his hand in this Court first.

### 2.    The criminal proceeding implicates important state interests.

This factor requires little discussion. *Younger* itself does not separately consider the importance of state interests because the underlying proceedings there were criminal prosecutions—their importance was self-evident. So too here.

Plaintiffs do not dispute that even misdemeanor criminal cases implicate important state interests. They instead argue that there is no state interest in "misapplying Georgia's littering statute" and that concerns about littering are unimportant when First Amendment principles are at stake.[27] But Plaintiffs' arguments miss the purpose of this factor.

---

[27]    ECF 50, at 6.

The importance to the state of prosecuting even minor crimes doesn't depend on whether Plaintiffs' First Amendment claims are correct. *Boyd v. Georgia*, 512 F. App'x 915, 918 (11th Cir. 2013) (explaining that Georgia has an important interest in prosecuting misdemeanor traffic offenses). *Younger* presumes free speech claims are important. But "First Amendment concerns do not, in themselves, provide a federal court with justification for interfering with a pending state criminal proceeding." *New Ga. Project*, 106 F.4th at 1245 (quoting *For Your Eyes Alone*, 281 F.3d at 1219). Nor does the possible chilling effect of certain laws "justify prohibiting the State from carrying out the important and necessary task of enforcing these laws against socially harmful conduct that the State believes in good faith to be punishable under its laws and the Constitution." *Younger*, 401 U.S. at 51–52. Plaintiffs have not established that enforcement of Georgia's criminal laws does not implicate important state interests.

### 3.    There is an adequate opportunity in the state proceeding to raise constitutional challenges.

Plaintiffs do not argue that they are prevented from raising their First Amendment defenses in the criminal proceeding. They only contend that the state court "will not afford them an opportunity to determine their constitutional

claim"[28] because "Plaintiffs will not have [the state court] as a forum."[29] Put slightly differently, since Plaintiffs refuse to present their constitutional defenses in state court, the state court cannot rule on them. But Plaintiffs' preference for a federal forum is not a sufficient basis for this Court to ignore *Younger*. Unless there is clear authority to the contrary, federal courts should presume that state procedures provide parties a sufficient opportunity to raise constitutional issues. *Middlesex Cnty.*, 457 U.S. at 431 ("Minimal respect for the state processes, of course, precludes any presumption that the state courts will not safeguard federal constitutional rights."); *Chen ex rel. V.D. & D.D. v. Lester*, 364 F. App'x 531, 535 (11th Cir. 2010) (per curiam) (citing *31 Foster Children,* 329 F.3d at 1279 ). The crucial question is whether a plaintiff is *procedurally* unable to raise his constitutional claims in the state court proceeding. *Johnson v. Florida*, 32 F.4th 1092, 1101 (11th Cir. 2022) (citing *Pompey v. Broward Cnty.*, 95 F.3d 1543, 1551 (11th Cir. 1996)).

The burden rests with Plaintiffs to show that they cannot raise their federal defenses in the state criminal proceeding. *Leonard v. Ala. State Bd. of Pharmacy*, 61 F.4th 902, 908 (11th Cir. 2023). "To demonstrate that claims are procedurally prevented in state tribunals, plaintiffs should provide evidence of state laws, rules, or procedures that would allow a district court to evaluate whether the plaintiff's

---

[28]  *Id.*

[29]  *Id.*

federal claims will effectively be shut out from the judicial system and cut off from effective review in the courts." *Id.* at 909. Plaintiffs have made no such showing.

Plaintiffs instead insist that they are *entitled* to a federal forum for their First Amendment claims, citing *England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411 (1964).[30] Their reliance on *England* is misplaced. In that case, chiropractic school graduates sued in federal court seeking to practice in Louisiana without having to comply with the educational requirements of the state's Medical Practice Act.[31] The district court abstained on the basis that Louisiana's courts should first determine whether the requirements applied to chiropractors. After the plaintiffs proceeded in state court and lost on their Fourteenth Amendment claim, they returned to federal court. At that point, the district court concluded that it could not review the final judgment of the state court. The Supreme Court reversed and remanded for the district court to decide the merits of the plaintiffs' claims. In this context, it held that there were "fundamental objections to any conclusion that a litigant who has properly invoked the jurisdiction of a Federal District Court to

---

[30]  *Id.* at 6–7.

[31]  The Supreme Court described the dispute as raising "a question so simple that it at least verges on the insubstantial. The question is whether Louisiana's Medical Practice Act . . . includes chiropractors as practitioners of medicine. The State Board of Medical Examiners, representing the State, says that they are included. The chiropractors say they are not and, if they are, that the Act is unconstitutional." *England*, 375 U.S. at 426.

consider federal constitutional claims can be compelled, without his consent and through no fault of his own, to accept instead a state court's determination of those claims." *Id.* at 414.

*England* did not involve "the possibility of unwarranted disruption of a state administrative process" much less a criminal proceeding. *Id.* at 415 n.5 (citing, *inter alia*, *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943)). In fact, there was no ongoing state-court case at all when the plaintiffs filed their federal suit. *England* says nothing about the situation presented here—which is squarely governed by *Younger*—and Plaintiffs have not shown that they are procedurally barred from raising their federal defenses in the Georgia criminal proceeding.

### B. The exceptions to *Younger* abstention do not apply.

All three factors supporting the application of *Younger* abstention are satisfied here. The Court should therefore abstain from hearing Plaintiffs' claims unless an exception applies. Those exceptions are when the federal-court plaintiff can show (1) the criminal statute is "flagrantly and patently" unconstitutional or (2) the criminal charges were pursued in bad faith or to harass. *Younger*, 401 U.S. at 53–54; *Middlesex Cnty.*, 457 U.S. at 435. Only extraordinary circumstances justify application of an exception. *Middlesex Cnty.*, 457 U.S. at 435.

### 1.    Patently Unconstitutional Statute

At issue are Georgia's littering statutes, O.C.G.A. §§ 16-7-42 and 16-7-43. As relevant here, § 16-7-43 makes it unlawful for anyone to "dump, deposit, throw, or leave or to cause or permit the dumping, depositing, placing, throwing, or leaving of litter on any public or private property in this state." *Id.* § 16-7-43(a). Section 16-7-42, in turn, defines litter as "any discarded or abandoned" "refuse, rubbish, junk, or other waste material." *Id.* § 16-7-42(1)(A). The prohibition applies to both public and private property. *Id.* § 16-7-43(a).

Plaintiffs do not argue that these statutes are unconstitutional on their face. Rather, Plaintiffs assert that the statutes are overbroad because they are being used against protected speech.[32] That is, Plaintiffs object to the application of the laws to their conduct. Such as-applied challenges to a statute are not enough to invoke the patently unconstitutional exception to *Younger*.

Demonstrating how narrow this exception is, the Supreme Court has explained that even "the possible unconstitutionality of a statute 'on its face' does not in itself justify an injunction against good-faith attempts to enforce it." *Younger*, 401 U.S. at 54. The statute must be unconstitutional "in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be

---

[32] ECF 43, at 6, 11–12, 17–18; ECF 50, at 3–4; ECF 51, at 2 (discussing the "chilling aspects of Defendants' patently unconstitutional application of their littering statute . . . .").

made to apply it." *New Ga. Project*, 106 F.4th at 1245 (quoting *Younger*, 401 U.S. at 53–54). For instance, an ordinance that prohibited the distribution of any kind of literature within city limits without written permission from the city manager was invalid on its face. That's because

> [t]he ordinance is comprehensive with respect to the method of distribution. It covers every sort of circulation "either by hand or otherwise." There is thus no restriction in its application with respect to time or place. It is not limited to ways which might be regarded as inconsistent with the maintenance of public order, or as involving disorderly conduct, the molestation of the inhabitants, or the misuse or littering of the streets. The ordinance prohibits the distribution of literature of any kind at any time, at any place, and in any manner without a permit from the city manager.

*Lovell v. City of Griffin*, 303 U.S. 444, 451 (1938). Plaintiffs have not asserted that Georgia's littering statutes are unconstitutional in every possible application— only that the laws are problematic as applied to their distribution of colportage. *Younger*'s patently unconstitutional exception does not apply here.

## 2.    Bad Faith/Harassment

To show a bad-faith prosecution or harassment sufficient to satisfy the *Younger* exception, the federal plaintiff must put forward substantial allegations that the criminal charges against him are being pursued without *any* expectation of securing a valid conviction or for the purpose of suppressing the plaintiff's constitutional rights. *Younger*, 401 U.S. at 48; *Leonard*, 61 F.4th at 911–12. As with

the patently unconstitutional exception, the bar here is also extremely high. *See,*
*e.g.*, *Netflix, Inc. v. Babin*, 88 F.4th 1080 (5th Cir. 2023) (applying the bad-faith
exception where the prosecutor selectively presented evidence to the grand jury,
charged the plaintiff under a statute that had already been held facially
unconstitutional by the state supreme court, and charged the plaintiff with an
offense that was precluded by the undisputed factual evidence). Indeed, the
Supreme Court itself has never applied the bad-faith/harassment exception. 17B
WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 4255 (3d ed.). And because
Plaintiffs here are seeking preliminary injunctive relief, their allegations of bad-
faith prosecution must demonstrate a substantial likelihood of success on the
merits. Plaintiffs have not met that high bar.

### *i.*    The Well-Pleaded Allegations

The Court treats the following well-pleaded allegations as true—whether
they are in the original or proposed amended complaint.[33] Plaintiffs distributed
their literature in various Georgia counties for several months before November
2023 without being arrested. Several police agencies concluded that their conduct

---

[33] Contrary to Plaintiffs' suggestion that Defendants have conceded various facts
[*see generally* ECF 50], in moving to dismiss, Defendants were required to treat
Plaintiffs' allegations as true. *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273
n.1 (11th Cir. 1999) ("At the motion to dismiss stage, all well-pleaded facts are
accepted as true.").

was protected free speech.[34] (The pleadings to do not allege that Plaintiffs distributed the literature in the same manner they used in Douglas County, but the Court assumes this for immediate purposes.) After distributing the colportage in Douglas County, nine armed officers went to the Jacobses' home to arrest them—with "guns drawn." The officers "aggressively served the warrants."[35] They refused to show Hilary Jacobs the warrants despite her request.[36] In Plaintiffs' opinion, the force used by the officers "was not reasonably proportionate to the alleged severity of the crime of littering."[37] The bond set for each of the Jacobses was higher than the bonds set that day for other criminal defendants, including some charged with felonies.[38]

The Jacobses were detained for five days until they could pay a commercial bonding agency ($4,000) to get released.[39] Plaintiffs contend that the delay between

---

[34]  ECF 43-1, ¶¶ 24–25.

[35]  *Id.* ¶ 63.

[36]  *Id.* ¶ 64.

[37]  *Id.* ¶ 67.

[38]  *Id.* ¶ 74; ECF 44-1, ¶ 29. The original complaint alleges that the Jacobs were charged with 302 counts of littering. ECF 1, ¶ 30. The proposed amendment omits that allegation but asserts that Defendants came across 109 baggies with Plaintiffs' flyers. ECF 43-1, ¶ 33. The criminal accusation charges Philip and Hilary with five counts each of littering. *See generally* Docket, *Georgia v. Jacobs*, Case No. 25SR00596 (Douglas Cnty. St. Ct.).

[39]  ECF 43-1, ¶¶ 73, 76.

their arrests (in November 2023) and the formal accusation (in May 2025) was designed to intimidate them from distributing flyers.[40] A public statement by police discussing the flyer distribution referred to the materials as "antisemitic in nature," which Plaintiffs argue demonstrates law enforcement's focus on the viewpoint of the literature.[41]

Even assuming these allegations to be true, as the Court must, they do not substantially demonstrate that Defendants are prosecuting Plaintiffs without *any* expectation that valid convictions can be secured. The Court assumes for purposes of this Order that the content of the flyers is protected by the First Amendment—something even Defendants seem to accept. But Plaintiffs have not pointed to any case (and the Court has found none) establishing a constitutional right to distribute protected content in the *manner* used by Plaintiffs.

> ### ii. Plaintiffs have not substantially alleged that Defendants have no expectation of obtaining valid convictions.

The Supreme Court has made clear that there is a First Amendment right to distribute materials in public and door-to-door to homes. But states may enact reasonable restrictions on the time, place, and manner of such hand-billing. Given

---

[40] *Id.* ¶ 77.

[41] *Id.* ¶ 55.

the relevant case law, it is not obvious that Plaintiffs *cannot* be convicted of littering, their First Amendment rights notwithstanding.

In *Schneider v. New Jersey*, the Supreme Court considered whether several cities' ordinances restricting hand-billing violated the First Amendment. While holding that the laws at issue restricted freedom of speech, the court also made clear that municipal authorities could "lawfully regulate the conduct of those using the streets." 308 U.S. 147, 160 (1939). The First Amendment does not "deprive a city of all power to prevent street littering. There are obvious methods of preventing littering. ***Amongst these is the punishment of those who actually throw papers on the streets***." *Id.* at 160 (emphasis added). "Prohibition of such conduct would not abridge the constitutional liberty since such activity bears no necessary relationship to the freedom to speak, write, print or distribute information or opinion." *Id.* at 160–61. In contrast to the ordinances at issue in *Schneider*, Georgia's littering statutes do not prohibit distribution of literature in the streets, public places, or even to private homes. Nor do they regulate the content of any such literature, require a license to distribute it, or necessitate official approval to engage in distribution. O.C.G.A. §§ 16-7-42, -43.

A few years after *Schneider*, the Supreme Court held that an ordinance restricting door-to-door distribution of literature that did not "control anything but the distribution of literature" to people in their homes violated the

Constitution. *Martin v. City of Struthers*, 319 U.S. 141, 143 (1943). Still, the court noted that "the peace, good order, and comfort of the community may imperatively require regulation of the time, place, and manner of distribution." *Id.* at 143 (citing *Cantwell v. Connecticut*, 310 U.S. 296, 304 (1940)) (emphasis added). *Martin* does not support Plaintiffs' argument that the distribution of literature by tossing it in people's yards or driveways (weighted down and in plastic baggies) is protected First Amendment expression.

Finally, Plaintiffs rely heavily on *Statesboro Publishing Co. v. City of Sylvania* in support of their contention that their chosen flyer-delivery method cannot possibly be construed as litter.[42] But that case helps their arguments no more than *Schneider* or *Martin*. In *Statesboro*, the plaintiff delivered a weekly newspaper to city residents by throwing it into yards and driveways. The city's ordinance, which prohibited the distribution of "free printed material in yards, driveways, or porches," was upheld by the state trial court as constitutional. 271 Ga. 92, 92 (1999). The Georgia Supreme Court, however, held that the ordinance violated both the Georgia and United States Constitutions. *Id.* at 94–96. The court concluded that the ordinance broadly regulated speech in a way that "would impose substantial costs on an important means of communication" and therefore imposed unreasonable

---

[42]   *See, e.g.*, ECF 43, at 12–13, 17–18; ECF 50, at 2.

regulations on the place and manner of distribution in violation of the First Amendment. *Id.* at 95.

The ordinance in *Statesboro* directly regulated the dissemination of speech. Even then, the Georgia Supreme Court concluded that cities may "adopt reasonable restrictions regulating the time, place, or manner of expression. The restrictions are valid if they do not refer to the content of the speech, are narrowly tailored to serve a significant government interest, and leave open alternative methods of communication." *Id.* (citations omitted). The littering statutes at issue here do not regulate speech at all or even directly target expressive conduct. They do not prevent handing out flyers in public places or door-to-door. *Statesboro* does not clearly permit Plaintiffs' conduct. Their assertion that the case demonstrates Defendants' bad faith is therefore misplaced.

None of this is to say that Plaintiffs' conduct was ***not*** protected by the First Amendment. But Plaintiffs seek the extraordinary relief of an order from this Court enjoining an ongoing state criminal proceeding. The burden on them to justify such an extreme and unusual exercise of federal authority is equally high. Plaintiffs must show through substantial allegations a substantial likelihood that Defendants acted with bad faith. *Hudson v. Hubbard*, 358 F. App'x 116, 118 (11th Cir. 2009) (per curiam) ("While [the plaintiff] broadly claims that the district attorney and state trial judge acted in bad faith, *Younger* requires more. [The

plaintiff] must make a 'substantial allegation' showing actual bad faith."). The case law surveyed here demonstrates that prosecution of Plaintiffs for littering is not inherently inconsistent with the First Amendment. Plaintiffs have not carried their burden to show that Defendants are acting in bad faith.

* * * *

Because the Court concludes that it should abstain from hearing Plaintiffs' claims for injunctive and declaratory relief, Plaintiffs cannot show a substantial likelihood of success on the merits. Accordingly, their motion for issuance of a preliminary injunction is **DENIED**.

## III.    Motion to Dismiss and Motion for Leave to Amend

Defendants' motion to dismiss the original complaint argues that the Court should decline to exercise jurisdiction over Plaintiffs' claims for injunctive and declaratory relief based on *Younger*.[43] The Court agrees. Plaintiffs' claims must be dismissed to the extent they seek injunctive and declaratory relief. *Smith v. Mercer*, 266 F. App'x 906 (11th Cir. 2008). Nor does Plaintiffs' proposed amended complaint remedy the problem: The criminal proceeding is still ongoing, important state interests are still involved, and Plaintiffs are not prohibited from raising their First Amendment arguments in the criminal proceeding. To the extent

---

[43]    ECF 39-1, at 22–24.

their proposed amendment attempts to amplify the bad-faith allegations sufficient to trigger an exception to *Younger* abstention, it fails to do so.[44]

Abstention is also appropriate as to Plaintiffs' claims for monetary relief because those claims involve the same issues and concerns as the ones for equitable relief. While equitable claims must be dismissed under *Younger*, claims for monetary relief that cannot be pursued in the state proceeding must be stayed. *Deakins v. Monaghan*, 484 U.S. 193, 202 (1988); *Tribble*, 653 F. App'x 666.

## IV.    Conclusion

The Court abstains from hearing Plaintiffs' claims for injunctive and declaratory relief pursuant to *Younger v. Harris,* 401 U.S. 37. Those claims are therefore **DISMISSED without prejudice**. Plaintiffs' claims for monetary relief are **STAYED** during the pendency of the criminal proceeding against them. Plaintiffs' motion for a preliminary injunction [ECF 44] is **DENIED**. Defendants' motion to dismiss [ECF 39] is **GRANTED** to the extent it asserts the Court must abstain from hearing Plaintiffs' claims for injunctive and declaratory relief and **DENIED** as moot in all other respects. Plaintiffs' motion for leave to amend [ECF 43] is **DENIED as moot**.

---

[44]    *See supra* Section II.B.2.i.

The Clerk is **DIRECTED** to **ADMINISTRATIVELY CLOSE** this case. This closure is not a dismissal and does not prohibit the filing of documents. Any party may move to reopen this case after the pending criminal proceeding has been fully adjudicated. If no party moves to reopen this case within 60 days after the criminal proceeding has been fully adjudicated (including any appeals), the case will be deemed dismissed with prejudice.

**SO ORDERED** this 5th day of November, 2025.

Steven D. Grimberg
United States District Judge